UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM HERSHEY and
HERSHEY COMMERCIAL
FUNDING, INC.,

      Plaintiffs,                                   Case No. 08-10522

v.

                                                 Hon. John Corbett O'Meara

CAPITAL REALTY SERVICES, INC.,
f/k/a CRS, LLC, ACTIVE FINANCE
GROUP, LLC f/k/a KMA II, LLC and
GREGG REICHMAN, individually,

      Defendants.
_____/

## OPINION AND ORDER

Before the court are Defendants Gregg Reichman and Active Finance Group, LLC's motions for summary judgment, filed February 13, 2009. Plaintiffs submitted a combined response on March 27, 2009. Defendants filed reply briefs on April 3, 2009. The court heard oral argument on April 16, 2009, and took the matter under advisement. For the reasons stated below, Reichman's motion is granted and Active Finance Group's motion is granted in part and denied in part.

## BACKGROUND FACTS

This is an action based upon the breach of an oral contract. Plaintiffs are William Hershey and Hershey Commercial Funding, Inc. Defendants are Capital Realty Services, Inc., Active Finance Group LLC, and Gregg Reichman.

In 1998, Reichman was the managing member of Capital Realty, an Arizona-based firm. Capital Realty's business was to purchase foreclosed properties, fix them up, and sell them at a

profit. Capital Realty obtained capital to make these purchases from various sources, including private investors.

Private investors were often introduced to Capital Realty through a placement agent or "money finder." Hershey is a placement agent who works through his company, Hershey Commercial Funding, a Michigan corporation.

In the fall of 1998, Reichman and Hershey met in Arizona to discuss Capital Realty retaining Hershey as a placement agent. Reichman showed Hershey how Capital Realty's business operated. At the end of the day, after a brief conversation, the parties agreed that Hershey would act as a placement agent for Capital Realty in exchange for a commission. Plaintiffs contend that the commission was to be 1.5% of the invested money for the first year and 1.0% per year thereafter, so long as the investor continued his investment. The parties did not put their agreement in writing.

Hershey was successful in finding private investors who invested millions of dollars in Capital Realty. Hershey was paid commission without any dispute between the parties until 2006. Around that time, Reichman sought to reduce and then cease commission payments on certain investors to "get this in line with industry standards." Def.'s Ex. D. Reichman followed through with this proposal, ceasing commission payments altogether in 2007. This litigation ensued.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When

reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.     Defendant Reichman's Motion

### A.     Breach of Contract

Plaintiffs have named Reichman as a defendant in his individual capacity, contending that he was a party to the agreement between Plaintiffs and Capital Realty and is personally liable for breach of contract.[1]  Alternatively, Plaintiffs have stated an unjust enrichment claim against him.  Reichman has moved for summary judgment, arguing that he was not a party to the agreement, but rather, was acting on behalf of Capital Realty.

Plaintiffs' evidence of Reichman's intent to be bound by the oral commission agreement is scant and consists mainly of Hershey's subjective impressions.  For example, Hershey testified that he "felt" that Reichman had a personal obligation to pay him: "Well, I made my agreement way back in 1998 with Gregg, fully knowing that general partners file this partnership, that partnership, and I considered Gregg a general partner type person, sponsor, and so I felt always that I made my deal with Gregg." Hershey Dep. at 28.  See also id. at 28-29 ("[W]hen I dealt with Gregg, I felt I'm dealing with Gregg."); Id. at 39 ("I feel that Gregg Reichman had an

---

[1] Plaintiffs have not attempted to plead an alter ego/piercing the corporate veil claim against Reichman, but have argued that he was a party to the agreement because he manifested an intent to be personally bound.

-3-

obligation to pay me. . . ."; Id. at 39 ("I made my original agreement with Gregg Reichman, knowing that we both had very small companies, and I rely on people, and I made my agreement with Gregg Reichman.").

Hershey also testified that Reichman said that "he would see to it that I got paid." Hershey Dep. at 39-43. Hershey took this to mean that "he guaranteed that I would get paid as long as he was using the funds of my clients." Id. at 40. The record is devoid of evidence, however, that Reichman objectively manifested any intent to be personally bound by the contract.

> Q: Did Gregg ever say to you, if Capital Realty – or, Bill, if Capital Realty fails to make a payment, let me know, I'll pay you personally, or something similar to that?
> A: No.
> Q: Did Gregg ever say to you something to the effect of: Bill, I'm going to be paying you out of my own personal checking account, or something similar to that effect?
> A: No.
> Q: When you or Hershey Commercial were paid under this oral agreement, were any of the payments received from Gregg Reichman's individual accounts?
> A: I – I don't know.

Hershey Dep. at 29.

Hershey points to a letter written by Reichman in 2005, which he claims is additional evidence of Reichman's personal obligation. The letter is hand-written on personal stationary. In it, Reichman attempts to change the terms of the parties' agreement. Hershey claims that Reichman "wrote in the first person, not in a capacity as a member of an entity or as an agent." Pl.'s Br. at 17. E.g., Pl.' s Ex. 1 ("I have been struggling with your compensation for a while now. Hopefully you would agree that our firm, and myself personally have always been very fair with you for many years. . . . I think I have been a good friend to you in this regard, in spite

of pressures I have been under from my CFO, and the partners to get this in line with industry standards.").

Contrary to Plaintiffs' argument, Reichman's October 12, 2005 letter does not objectively manifest any intent or obligation on his part to be personally bound by the oral commission agreement. See generally Rood v. General Dynamics Corp., 444 Mich.107, 118, 507 N.W.2d 591 (1993) ("A basic requirement of contract formation is that the parties mutually assent to be bound.").[2] Reichman's use of the first person in the letter is a convention of correspondence that does not necessarily create personal legal obligations. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could not find that Reichman was a party to the oral agreement between Plaintiffs and Capital Realty. See generally Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001) ("[C]onclusory allegations and [the plaintiff's] perceptions . . . are not sufficient to stave off summary judgment."). The court will grant summary judgment in favor of Reichman on Plaintiffs' breach of contract claim.

**B.   Unjust Enrichment**

Plaintiffs also assert an unjust enrichment claim against Reichman, contending that he received the benefit of Plaintiffs' services without paying commissions. "The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. In such instances, the law operates to imply a contract in order to prevent unjust enrichment. However, a

---

[2] Defendants note that either Arizona or Michigan law could apply to the breach of contract claim, although they contend that there is no material difference between them for the purposes of this motion. Seeing no reason to displace the law of the forum, the court will apply Michigan law.

contract will be implied only if there is no express contract covering the same subject matter." Barber v. SMH (US), Inc., 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993).

Plaintiffs cannot state a claim for unjust enrichment against Reichman. Plaintiffs did not provide "money finder" services to Reichman personally, but provided them to his company or companies. There is no evidence that Reichman directly "received a benefit" from Plaintiffs. See generally Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 798 (6th Cir. 2007) ("Under Michigan law, there is a presumption that the corporate form will be respected."). Further, there is no claim here that the corporate veil should be pierced to impose personal liability on Reichman. The court will dismiss Plaintiffs' unjust enrichment claim against Reichman.

**C.     Discovery Issue**

Plaintiffs have requested that the court delay ruling on Reichman's motion for summary judgment until Plaintiffs obtain certain records regarding KMA Associates LLC. See Pl.'s Ex. 6 (Rule 56(f) affidavit). Plaintiffs note that Active Finance was once known as KMA Associates LLC. KMA Associates also issued commissions checks to Hershey Commercial Funding. Apparently, Plaintiffs have been unable to locate in Arizona business records how/when KMA Associates was formed. They are seeking company formation/tax records from KMA Associates' bank.

Plaintiffs contend that if KMA Associates was a d/b/a for Reichman personally "then there is no corporate shield for Reichman. It would be the equivalent of Reichman cutting checks himself; which, if true, is further evidence that Reichman assumed and ratified Defendant Capital Realty Services' obligations to pay Plaintiffs commissions." Pl.'s Ex. 6 at ¶ 11.

The additional evidence Plaintiffs are seeking, in itself, does not change the court's analysis of the summary judgment motion, however. Reichman did not manifest an objective intention to be personally bound to the oral agreement between Plaintiffs and Capital Realty. In light of that, it is not clear how he can personally be liable for the contractual obligations of his company by subsequently providing the funds to pay Plaintiffs, particularly where there is no attempt to pierce the corporate veil of Capital Realty. Based upon this record, the court finds no basis to delay ruling on Reichman's motion.

### III.    Active Finance's Motion for Summary Judgment

Defendant Active Finance has moved for summary judgment on Plaintiffs' breach of contract claim, contending that it was not a party to the contract. Active Finance was not in existence at the time the contract was formed in 1998. Rather, Active Finance was formed by Reichman in 2003.

Plaintiffs counter that Active Finance ratified the oral commissions agreement through its actions. Active Capital used capital that was procured by Plaintiffs and then paid Plaintiffs' commissions. Reichman testified that Capital Realty liquidated in 2001 and its main investors moved their money from Capital Realty to Active Finance and a company called KMA II.[3]

Plaintiffs note that "a corporation may be liable on preincorporation contracts of promoters or incorporators if these contracts are ratified or adopted by the corporation." Henderson v. Sprout Bros., Inc., 176 Mich. App. 661, 673; 440 N.W.2d 629 (1989). Active Finance responds that, at the time the contract was made, Reichman was not acting as a promoter

---

[3] Plaintiffs do not allege that Active Finance and KMA II were successors or mere continuations of Capital Realty.

for that corporation, which did not come into existence until five years later.

Active Finance is correct that there is no evidence that it was a party to the express contract or that it expressly ratified it. Accordingly, the court will grant summary judgment in Active Finance's favor on the breach of contract claim.

Active Finance has not, however, sustained its burden of demonstrating that it is entitled to judgment as a matter of law on the unjust enrichment claim. It appears that Active Finance benefitted from Plaintiffs' services by using the capital procured by Plaintiffs. Active Finance also paid Plaintiffs their commissions for some time, suggesting that it understood that it needed to compensate Plaintiffs for the benefits received. Accordingly, Plaintiffs can sustain their unjust enrichment claim against Active Finance. See Barber, 202 Mich. App. at 375.

## ORDER

IT IS HEREBY ORDERED that Gregg Reichman's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Active Finance Group LLC's motion for summary judgment is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

s/John Corbett O'Meara
United States District Judge

Date:  April 28, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 28, 2009, by electronic and/or ordinary mail.

                s/William Barkholz
                Case Manager